Jeffrey S. Pope (Wyo. State Bar # 7-4859)
Andrea N. Grave (Wyo. State Bar # 8-6702)
HOLLAND & HART LLP
2020 Carey Avenue, Suite 800
P.O. Box 1347
Cheyenne, WY 82003-1347
Telephone: 307.778.4200
Facsimile: 307.778.8175
JSPope@hollandhart.com
ANGrave@hollandhart.com

Paul A. Werner (admitted *pro hac vice*)
Imad Matini (admitted *pro hac vice*)
Thomas Reklaitis (admitted *pro hac vice*)
Hannah J. Wigger (admitted *pro hac vice*)
Tiffen V. Drouaud (admitted *pro hac vice*)
SHEPPARD MULLIN RICHTER & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, D.C. 20006-6801
Telephone: 202.747.1931
Facsimile: 202.747.3817
pwerner@sheppardmullin.com
imatini@sheppardmullin.com
treklaitis@sheppardmullin.com
hwigger@sheppardmullin.com
tdrouaud@sheppardmullin.com

Kazim Naqvi (admitted *pro hac vice*)
SHEPPARD MULLIN RICHTER & HAMPTON LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
Telephone: 424.288.5336
knaqvi@sheppardmullin.com

ATTORNEYS FOR PLAINTIFF
BOND PHARMACY, INC. D/B/A AIS HEALTHCARE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| BOND PHARMACY, INC. d/b/a AIS HEALTHCARE,<br><br>        Plaintiff,<br><br>   v.<br><br>BLUE CROSS BLUE SHIELD OF WYOMING,<br><br>        Defendant. | Civil Action No. 2:23-cv-00053-KHR |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION .................................................................................................................1

UNDISPUTED MATERIAL FACTS ..................................................................................3

STANDARD .......................................................................................................................20

ARGUMENT ......................................................................................................................20

    I.     AIS Is Entitled To Summary Judgment On Its Breach Of Contract Claim. ..........20

    II.    AIS Is Entitled To Summary Judgment On Its Breach Of The Implied Covenant Of Good Faith And Fair Dealing Claim. ................................................22

    III.   AIS Is Entitled To Summary Judgment On Its Declaratory Judgment Claim. ..................................................................................................................23

    IV.   AIS Is Entitled To Summary Judgment On BCBSWY's Counterclaims. .............24

    V.    AIS Is Entitled To Summary Judgment On BCBSWY's Affirmative Defenses. ...............................................................................................................25

CONCLUSION ...................................................................................................................25

## **TABLE OF AUTHORITIES**

**Cases**                                                                                    **Page(s)**

*Matsushita Elec. Indus. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)...........................................................................................20

*Nepco v. Felice*,
    2013 WL 12086204 (D. Wyo. July 9, 2013) ................................................20, 25

*Powell Valley Health Care, Inc. v. Healthtech Mgmt. Servs.*,
    2013 WL 12085501 (D. Wyo. May 23, 2013)...............................................22, 23

*Sneve v. Mut. Of Omaha Ins. Co.*,
    No. 13-CV-252-ABJ, 2015 WL 12866983 (D. Wyo. Apr. 23, 2015) ....................25

*Travis v. Park City Mun. Corp.*,
    565 F.3d 1252 (10th Cir. 2009) ..........................................................................20

*USI Insurance Servs. LLC v. Craig*,
    2019 WL 5295533 (D. Wyo. Apr. 9, 2019)..........................................................24

*Westchester Fire Ins. Co. v. Merrill Inc.*,
    2023 WL 5300993 (D. Wyo. May 18, 2023)...................................................20, 22

*Winter v. Pleasant*,
    222 P.3d 828 (Wyo. 2010).................................................................................24

Statutes

28 U.S.C. § 2201 .................................................................................................23

Other Authorities

AIS Healthcare, *About AIS Healthcare*, https://aiscaregroup.com/about/ (last visited Aug.
    27, 2024) ..............................................................................................................4

Fed. R. Civ. P. 56.................................................................................................20

Plaintiff Bond Pharmacy, Inc., d/b/a AIS Healthcare ("AIS"), submits this Memorandum in Support of AIS's Motion for Summary Judgment against Defendant Blue Cross Blue Shield of Wyoming ("BCBSWY").

## **INTRODUCTION**

This is a straightforward breach case in which BCBSWY has in bad faith denied AIS payment for providing BCBSWY's most vulnerable members with critical home infusion therapy ("HIT") services for years pursuant to the parties' agreement.

In January 2019, BCBSWY contracted with AIS, a leading provider of specialized HIT services, to provide HIT to its members under a Participating Provider Agreement ("Agreement"). Before entering that agreement, BCBSWY performed substantial diligence on AIS to understand its therapy, care, and services. To that end, BCBSWY agreed to pay AIS per diem charges for each day a patient is provided access to a prescribed therapy consistent with the standards established by the National Home Infusion Association ("NHIA").

For almost two years, BCBSWY paid AIS's per diem charges without issue. But in April 2022, it suddenly and without explanation refused to pay AIS's claims based on a unilateral effort to rewrite and redefine its payment obligations under the parties' Agreement. Now, after the parties have engaged in extensive discovery, taken multiple depositions, and produced thousands of pages of documentary evidence, the record is clear: BCBSWY intentionally breached the parties' Agreement by refusing to pay AIS for providing BCBSWY members with its vital therapy and services. AIS is therefore entitled to summary judgment on its breach of contract and related claims as well as on BCBSWY's reflexive and meritless counterclaims against AIS and boilerplate affirmative defenses.

AIS is a private compounding pharmacy and leading provider of highly-specialized and regulated intrathecal HIT services. HIT via intrathecal pump is a treatment of last resort reserved

for the sickest patients who would otherwise remain confined to a hospital bed or on oral opioids at the mercy of their well-known devastating side effects. To provide this life-enhancing and life-saving therapy, AIS develops custom medications for patients with intrathecal pumps that continuously infuse – that is, "administer" – medications directly to a patient's spinal column. AIS invests significant resources to ensure that its medications will remain sterile, stable, and effective in the patient's pump for up to 180 days. While these patients are on AIS's medications, they also necessarily remain under AIS's care and are "on service" with AIS. To meet care for these patients, AIS employs nurses, pharmacists, and operates a 24/7-staffed call center to provide ongoing access to services for its patients.

The record evidence and discovery confirm BCBSWY's breaches of the Agreement. BCBSWY's internal HIT policies from 2007 and 2021 are entirely consistent with per diem language in the NHIA Standards – as BCBSWY's own witnesses, including corporate designee, testified. Under the NHIA Standards and BCBSWY's policies, AIS may bill a per diem charge for each day a given patient is provided access to its prescribed therapy – that is, AIS's medication and related support services. BCBSWY's purported justification for denying AIS's per diem claims is that AIS is only entitled to a daily per diem if it provides ***all of the services*** listed under billing Code S9328. This makes no sense, is inconsistent with the NHIA standards and their purpose, and no single BCBSWY witness ***could identify a single fact or document*** – let alone any payment policy – to support its facially unreasonable position. BCBSWY's refusal to pay was nothing more than a callous business decision to bolster its bottom line.

## UNDISPUTED MATERIAL FACTS

### *AIS And Its HIT Services*

1.      AIS is a licensed compounding pharmacy and healthcare provider that offers specialty HIT and related services. Ex. 1, BCBSWY004260[1]. HIT is the creation, dispensing, and infusing of medication by parenteral means. *Id.* at BCBSWY004268. Under this therapy, patients receive a continuous, daily treatment at home – as opposed to an inpatient, hospital setting – and can resume normal lifestyles and work activities while recovering from illness. *Id.* at BCBSWY004266. HIT is typically prescribed for patients who have serious and abiding illnesses such as chronic pain resulting from cancer, multiple sclerosis, spinal cord injuries, or other debilitating conditions. Ex. 2, AISWY00005872–75, Mayfield Brain & Spine: Pain Pump.

2.      Typically, an accredited and licensed compounding pharmacy is responsible for providing HIT and provides a wide range of services to administer specialty drugs and care management services. Ex. 1, BCBSWY004266–67. Unlike a standard pharmacy that mass-produces commercial medications, a compounding pharmacy customizes each patient's medication to account for specific dosage, strength, content, and sterility requirements. *Id.*

3.      AIS operates in a specialized area of HIT. AIS develops and dispenses patient-specific compounded medications at the direction of a patient's treating physician that are continuously infused via implanted intrathecal pumps wherever the patient is located. Ex. 3, Kris Trump Deposition Transcript ("Trump Tr.") 45:12–46:2, 46:19–47:9; Ex. 4, BCBSWY Rule 30(b)(6) Deposition Transcript ("Trautwein Tr.") 49:10–17, 50:8–11, 52:3–22, 54:15–21; Ex. 5, Amy Scharaswak Deposition Transcript ("Scharaswak Tr.") 64:19–73:22.

---

[1] All Exhibits referenced herein are attached to the Declaration of Paul Werner, contemporaneously filed with this Motion.

4.      The pumps are surgically implanted and filled with prescribed medication that the pump continuously infuses[2] through a catheter to the patient's spinal column. Ex. 2. Intrathecal pumps can infuse the patient's medication daily for up to 180 days before needing to be refilled. *Id.* However, the medications used for intrathecal pumps have to be specially prepared for each patient to remain sterile, stable, and infuse continuously.[3] Otherwise, the medication will not infuse properly and undermine the patient's plan of care.

5.      AIS invests substantial capital and resources to make the highest quality medications for patients that will properly infuse within their intrathecal pumps for extended periods of time. Ex. 1, BCBSWY004266–67. To produce medications that can be infused for up to 180 days, AIS must undertake costly and specialized processes. *Id.* For example, AIS's pharmacists compound patient-specific medications in a certified clean-room that undergoes extensive continuous testing and quality checks. *Id.* And both the raw drug materials used in AIS's medications and the finished medications undergo extensive testing to ensure 100% accuracy and sterility for all patients. *Id.* Moreover, AIS develops its medications based on patient-specific care plans and conditions, which requires it extensively to coordinate and communicate with a patient's care provider on an ongoing basis. *Id.*

6.      In addition to preparing bespoke compounded medications, AIS also invests substantial resources to provide patients with ongoing care and services. *Id.* BCBSWY's Executive Vice President, Kris Urbanek, and other BCBSWY witnesses acknowledged that HIT includes patient care and services in addition to the actual infusion of drugs. Ex. 6, Kristopher Urbanek

---

[2] "Infusion" refers to the continuous release of AIS's medication as it proceeds through a patient's pump. The infusion is separate and apart from the refilling of the pump with medication conducted by a physician or nurse.

[3] AIS Healthcare, *About AIS Healthcare*, https://aiscaregroup.com/about/ (last visited August 27, 2024).

Deposition Transcript ("Urbanek Tr.") 76:16–19; Trump Tr. 49:1–25; Trautwein Tr. 53:2–5.  That is because as soon as a patient receives AIS's medications, the patient is considered "on-service" with – that is, under the care of – AIS. Ex. 7, AIS Rule 30(b)(6) Deposition Transcript ("30(b)(6) Tr.") 31:18–32:4, 114:20–115:5; Urbanek Tr. 76:16–19.

7.     The patient remains on-service for so long as the patient has access to AIS's medication through the patient's implanted pump. 30(b)(6) Tr. at 114:20–115:5; Trautwein Tr. 98:22–99:18. And so long as a patient remains on-service, AIS has an ongoing responsibility to make sure the patient is cared for at all times while prescribed its medications. 30(b)(6) Tr. at 31:18–32:4; Trautwein Tr. 89:4–21.

8.     To meet that ongoing responsibility, AIS provides patients with ongoing care and a range of available services, including continuous patient monitoring, professional pharmacy services, care coordination, nursing services, billing and financial support services, and administrative services. Ex. 1, BCBSWY00004267–68. These services are available to all patients as desired or necessary for no additional charge. Ex. 8, AISWY00000186; 30(b)(6) Tr. at 56:24–57:19. Urbanek, Executive Vice President, even testified that AIS's services, such as nursing visits to a patient's home to provide HIT services, including re-filling of medication, are necessary to HIT therapy. Urbanek Tr. 104:1–23.

9.     Among other services, AIS has a call-center that provides all patients and treating physicians with "24-7/365" telephone access to pharmacists and nurses for treatment- and billing-related support. Ex. 1, BCBSWY00004268. AIS also employs a team of nurses who provide in-patient care and coordinate other patient care and activities. *See* Ex. 9, AISWY00005516–36. AIS nurses can go to a patient's home to provide care, if necessary, as well as connect with patients and providers by telephone to discuss care plans and address other questions. *Id.*; Ex. 1, BCBSWY00004268.

10.     Upon commencing HIT treatment from AIS, each patient receives a "Welcome Packet" that provides, among other things: 1) itemization of all the various services AIS provides; 2) a 24/7 call number for support from nurses and pharmacists; and 3) a detailed description of how AIS bills on a per diem basis. Ex. 10, AISWY00000199; Ex. 8, AISWY00000186–198; Ex. 11, Ross Kamm Deposition Transcript ("Kamm Tr.") 51:5–22; 30(b)(6) Tr. at 55:9–56:19.

### The Per Diem Reimbursement Model

11.     NHIA is the leading national association for HIT providers and widely recognized as the national authority for establishing comprehensive coding and billing standards for various types of home infusion claims. Ex. 1, at BCBSWY00004266; Ex. 12. BCBSWY witnesses, including its Executive Vice President Kris Urbanek, admitted the NHIA Standards are an industry standard for HIT. Urbanek Tr. 98:19–23.

12.     Urbanek and other BCBSWY witnesses could not identify any other standard or regulation applicable to HIT other than the NHIA Standards. Urbanek Tr. 98:24–99:2; Trump Tr. 57:17–22, 63:15–19.

13.     The 2023 NHIA Standards (the "NHIA Standards") describes the use of HIT-specific billing codes under the Healthcare Common Procedure Coding System ("HCPCS"). Ex. 12. The HCPCS provides HIPAA-compliant standardized codes for billing of medical care and services, including HIT. Urbanek Tr. 67:4–25; Trump Tr. 43:22–44:4; Trautwein Tr. 48:4–21; Scharaswak Tr. 71:12–18. The HCPCS per diem billing code applicable to this case is Code S9328. Ex. 12, at AISWY00000982.

14.     CMS established HCPCS to ensure provider claims were (and still are) processed in an orderly, uniform, and consistent manner. *See* 45 C.F.R. 162.1002. For each alpha-numeric HCPCS Level II code, such as Code S9328, there is a descriptive definition that identifies the services for which that code can be billed. When submitting claims, providers must use the

appropriate HCPCS code to identify the services and care for which they are billing as provided for under the applicable code based on the plain text of that code. *Id.*

15.     HCPCS thus is "the only HIPAA-approved, comprehensive code set available to submit home infusion and ambulatory infusion suite claims that supports the typical per diem contracts present in the marketplace." Ex. 12, at AISWY00000982.

16.     HCPCS codes must be used by healthcare providers and payors, and payors cannot modify or substitute any HCPCS code, or impose conditions or requirements not set forth in any code given CMS – not private payors or providers – issues and promulgates every HCPCS code. Scharaswak Tr. 115:9–116:19; Trautwein Tr. 48:18–49:2; Ex. 27, AIS Expert Report, at 5.

17.     The NHIA Standards also expressly define "per diem" for HIT: "The term 'per diem' represents each day that a given patient is provided access to a prescribed therapy, beginning with the day the therapy is initiated and ending with the day the therapy is permanently discontinued." *Id.* at AISWY00000984.

18.     The NHIA Standards further explain that "[p]er diem reimbursement is intended to compensate for costs plus a fair return, i.e. the excess of revenues over expenses needed to ensure continued access to these therapies." *Id.* at AISWY00001076.

19.     Under the per diem reimbursement model, HIT providers bill for three distinct categories of claims: per diems, drugs, and nursing, with each billed separately. *Id.* at AISWY00001089.

20.     The drugs refer to the raw materials used to develop a final medication, while nursing refers to specific nursing interactions. Scharaswak Tr. 114:17–23, 201:6–202:25; 30(b)(6) Tr. 110:10–19, 122:22–123:1.

21.     However, the per diem covers under one, bundled code all other costs incurred to provide patients with access to a continuously available therapy, that is, the final medication and

any accompanying support and related services. Scharaswak Tr. 118:12–120:3; 30(b)(6) Tr. 120:11–25. For HIT via intrathecal pump, a provider bills a daily per diem under HCPCS Code S9328; indeed, that code is specific to intrathecal HIT. Scharaswak Tr. 118:22–119:3; 30(b)(6) Tr. 47:9–23.

22.     Code S9328 includes "implanted pump pain management infusion; administrative services, professional pharmacy services, care coordination, and all necessary supplies and equipment (drugs and nursing visits coded separately), per diem." Ex. 12, at AISWY00001089. It further states that "drugs and nursing visits [are] coded separately." *Id*.

23.     Under Code S9328, a HIT provider may bill a daily per diem for each day of "infusion" given the medication infuses daily and continuously – meaning 24/7/365 days – and as such, the patient has access to the HIT provider's therapy. Trautwein Tr. 98:22–99:18; Scharaswak Tr. 72:7–22, 97:11–16, 112:5–16.

24.     A HIT provider may also bill the per diem for each day it provides access to any one of the other covered services, such as administrative services. Trautwein Tr. 85:9–18.

25.     The types of "services, products, and other support costs" covered under the per diem generally fall under three categories: 1) Professional Pharmacy Services (including Dispensing, Clinical Monitoring, Care Coordination, and Supplies and Equipment; 2) Administrative Services; and 3) Other Support Costs. *Id*. at AISWY00001078; Urbanek Tr. 82:1–23, 87:22–90:22; Trump Tr. 59:20–60:14; Trautwein Tr. 61:6–62:4.

26.     Neither the NHIA Standards nor Code S9328 require a HIT provider to provide ***all of the covered services at one time*** to bill a per diem, or that the HIT services must be provided in a specific location. Urbanek Tr. 83:7–13; Trump Tr. 56:15–19; Trautwein Tr. 63:21–64:6.

27.     Given the substantial costs and overhead associated with the intrathecal HIT, Code S9328 is critical to the provision of HIT. Ex. 1 at AISWY00004265–67. It is the only way that a

HIT provider can recover the substantial costs necessary to provide the therapy daily. 30(b)(6) Tr. 119:25–120:20; Ex. 1.

28.     BCBSWY's Rule 30(b)(6) designee, Logan Trautwein, testified that AIS provides patients access to services while they are prescribed AIS's medications. Trautwein Tr. 134:10–16. BCBSWY also testified that drugs and nursing visits do not fall under per diem and are billed separately. Ex. 12 at AISWY00001078; Trautwein Tr. 64:7–10.

29.     Urbanek did not dispute that only one of the covered services must be provided for per diem to apply. Urbanek Tr. 84:2–7; Trautwein Tr. 63:20–64:6. BCBSWY, Urbanek, and other BCBSWY witnesses also did not dispute – and agreed – that a patient's intrathecal pump does not have to be re-filled in a specific location for the per diem to apply. Urbanek Tr. 84:21–85:17; Trump Tr. 56:21–57:1; Trautwein Tr. 66:7–17.

### *The Parties' Agreement*

30.     On May 24, 2019, the parties entered the Agreement for AIS to become an in-network provider for BCBSWY. Ex. 13.

31.     Before entering an agreement with a provider, BCBSWY engages in a thorough credentialing process before a provider is approved. Trautwein Tr. 137:8–138:6. As part of this process, a provider will complete a detailed application and then BCBSWY will perform a "primary source verification" to determine applicable licensing and prescriptive authority. Urbanek Tr. 23:8–25.

32.     In connection with that credentialing process, BCBSWY performed diligence on who AIS is, where they are located, what services they provide, and how AIS provides those services. Urbanek Tr. 108:13–20; Trautwein Tr. 140:7–21.

33.     Therefore, before entering the Agreement, BCBSWY understood that AIS, as an intrathecal HIT provider, would be allowed to bill a daily per diem for each day a BCBSWY member was on service with AIS. Trautwein Tr. 142:13–143:7.

34.     In fact, as its own designee testified, BCBSWY has had a HIT policy in place since 2007 that permitted a HIT provider, like AIS, to bill a daily per diem. Trautwein Tr. 146:11–147:8; *see* Ex. 14, Penelope Butterfield Deposition Transcript ("Butterfield Tr.") 35:8–20.

35.     Thus, when the Agreement was entered, BCBSWY had a "policy in place where AIS could bill the per diem daily for each day that a Wyoming member was on service with AIS." Trautwein Tr. 147:2–8.

36.     Under the Agreement, the parties agreed that a "claim" would constitute a "complete and accurate request for payment submitted by a Provider for Covered Services that have been provided by that Provider to a Participant." Ex. 13, § 1.3.

37.     "Covered Services" is defined as the "Medically Necessary services or supplies for which benefits are provided under the Participant's Benefit Document when provided by the Provider in the Service Area." *Id*. § 1.6.

38.     The Agreement also clarifies that a "Medically Necessary" service includes service that is "medically appropriate for the symptoms, diagnosis or treatment of the condition, illness, disease or injury" and is "in accordance with professional, evidence-based medicine and recognized standards of good medical practice and care." *Id*. § 1.9.

39.     Urbanek did not dispute that certain of the services AIS provides are medically necessary services for HIT therapy. Urbanek Tr. 113:20–114:18.

40.     BCBSWY agreed that it would reimburse AIS "directly for Covered Services at the lesser of Provider's charge or the Maximum Allowable Amount, minus any Cost Sharing Amounts." Ex. 13, § 2.4.

41.     BCBSWY also agreed that BCBSWY shall "[c]ommunicate new or revised policies and procedures to Provider." *Id*. § 2.7; Trautwein Tr. 151:6–13.

42.     And BCBSWY agreed to "[c]omply with all state and federal regulatory requirements associated with selling and servicing BCBSWY's products." Ex. 13, § 2.10.

### BCBSWY's Internal 2007 HIT Policy

43.     BCBSWY has produced two internal written policies applicable to HIT, one from April 2007 (the "2007 HIT Policy") and one from April 2021 (the "2021 HIT Policy"). Ex. 15, BCBSWY000005; Ex. 16, BCBSWY00003128–29. In the 2007 HIT Policy, which BCBSWY's Provider Relations Department issued and is consistent with the NHIA Standards, BCBSWY explained "HCPCS 'S' codes for home infusion services are based on a 'per diem' reimbursement methodology." Ex. 15; *see* Ex. 17, BCBSWY Responses to Interrogatories, Response to No. 6 (identifying BCBSWY000005 as part of BCBSWY's Provider Manual).

44.     Scharaswak, BCBSWY's Director of Population Health, testified that BCBSWY's provider guidelines reflect what BCBSWY applies internally. Scharaswak Tr. 76:10–13.  She also testified that she would expect providers to comply with such guidelines, and she is not aware of BCBSWY advising providers the provider guidelines are not BCBSWY policies. Scharaswak Tr. 84:21–85:10.

45.     The 2007 HIT Policy states, consistent with the NHIA Standards, the "per diem is billed each day that a patient is on service from date of admission through date of discharge." *Id*. "On service means" that the patient is receiving daily infusions of HIT medication and concomitant pain relief. Scharaswak Tr. 109:4–9.

46.     BCBSWY's policy also confirms, consistent with the NHIA Standards, that "[n]ursing services, drug products ordered by a physician, and enteral formulas are billed separately from per diem." *Id.*

47.     The 2007 HIT Policy does not state or require that all services listed under Code S9328 must be provided jointly for the per diem to apply. Ex. 15; Trautwein Tr. 85:9–18, 100:19–101:4; Scharaswak Tr. 90:23–91:6.

48.     Further, BCBSWY testified the definition of "per diem" in the 2007 HIT Policy and the NHIA Standards are consistent. Trautwein Tr. 92:4–10.

49.     Under the 2007 HIT Policy, BCBSWY further testified that the scope of "per diem" in terms of "admission" and "discharge" means "each day the patient has access to the HIT provider's medication in its pump." Trautwein Tr. 99:12–18; *see also* Urbanek Tr. 120:17–123:5.

50.     BCBSWY also testified that the 2007 HIT Policy has been in effect since 2007. Trautwein Tr. 100:10–18; *see also* Butterfield Tr. at 40:21–41:3[4]; Scharaswak Tr. 77:25–78:2.[5]

### *BCBSWY's 2021 HIT Policy*

51.     BCBSWY admitted that the 2021 HIT Policy is an excerpt from a BCBSWY provider manual. Ex. 18, BCBSWY's Response to AIS's Request for Admission No. 35.

52.     Urbanek and others also testified that the 2021 HIT Policy has never been replaced, amended, or modified. Urbanek Tr. 123:21–124:1, 141:11–21, 154:2–7; Trump Tr. 79:4–7, 91:11–20; Butterfield Tr. at 35:13–20.

53.     Despite the existence of this policy, BCBSWY does not provide any training to its employees on billing issues specific to HIT. Urbanek Tr. 54:5–9; Trump Tr. 38:16–39:3.

---

[4] After a break during his deposition, during which he was still under oath, BCBSWY's corporate designee consulted with Urbanek and then changed his prior testimony and testified that the 2007 HIT Policy was allegedly discontinued in 2020. Trautwein Tr. 110:9–111:10. However, he also testified that this change in approach to HIT policy was never communicated to AIS, as required under Section 2.7 of the Agreement. *Id.* at 152:10–153:18.

[5] Scharaswak, then Senior Manager of Medical Review who was the person making decisions about whether to pay customers on issues like HIT, testified that the 2007 HIT Policy was no longer in effect at some point in time, but could not identify any time period or year when that allegedly occurred. Scharaswak Tr. 78:16–80:10.

54.     The 2021 HIT Policy also mirrors the NHIA Standards.  It provides: "The HCPCS 'S' codes for home infusion services are based on a 'per diem' reimbursement methodology." Ex. 16. In other words, BCBSWY's own internal policy acknowledges that per diem reimbursement model applies for HIT services billed under "S" codes. *Id.*; Urbanek Tr. 118:13–18.

55.     The 2021 HIT Policy then provides a definition of "per diem" that is in lockstep with the NHIA Standards: "The per diem is billed for each day that a patient is on service from date of admission through date of discharge." *Compare* Ex. 12, *with* Ex. 16; *see also* Urbanek Tr. 119:21–25; Scharaswak Tr. 95:17–96:5, 107:14–108:9.

56.      The 2021 HIT Policy also confirms that "[n]ursing services, drug products ordered by physicians, and enteral formulas are billed separately from the per diem." Ex. 16; Scharaswak Tr. 116:16–117:22.

57.     Several BCBSWY witnesses, including its corporate designee, testified that the 2021 HIT Policy is consistent with the language in the NHIA Standards, including on its applicability and scope of per diem. Urbanek Tr. 119:21–120:16; Trump Tr. 73:14–75:7; Trautwein Tr. 91:6–92:10; Scharaswak Tr. 95:17–96:5, 107:14–108:9.

58.     Urbanek acknowledged that "admission" as used in the 2021 HIT Policy is the "date the patient began home infusion therapy" and "discharge" as used in the HIT Policy is when the patient is "no longer receiving services for those [HIT] medications." Urbanek Tr. 121:6–19, 122:25–123:7; *see also* Scharaswak Tr. 97:11–16, 107:14–108:9, 111:8–12, 113:13–25.

59.     Consistent with the NHIA Standards, the 2021 HIT Policy does not require that, in order for a per diem charge to apply, all covered services must all be provided, or that the HIT services must be provided in a single location. Trautwein Tr. 63:20–64:6.

60. Thus, since at least 2007, BCBSWY has had a HIT billing policy in effect that authorized a daily per diem to be billed and paid for each day that a patient has access to a HIT provider's infusing medication. Trautwein Tr. 98:17–99:18; Butterfield Tr. 40:10–41:10.

### BCBSWY Investigates AIS's Per Diem Claims Under False Pretenses

61. After the parties entered the Agreement, BCBSWY approved and paid AIS's Code S9328 and associated drug claims without issue for more than two years, between January 1, 2019, through April 2021. Trautwein Tr. 167:1–13, 168:3–11; Scharaswak Tr. 157:14–21.

62. BCBSWY testified that at least as of March 2020, BCBSWY did not require any prior authorizations for per diem Code S9328 that were billed. Trautwein Tr. 70:13–20; Ex. 19, BCBSWY00009202.

63. Nevertheless, BCBSWY opened an investigation into AIS, which was triggered on March 31, 2021, when BCBSWY Appeals Supervisor Kris Trump sent an internal e-mail asking that her husband's HIT claims from AIS be further investigated. Ex. 20, at BCBSWY003085; Urbanek Tr. 45:20–46:9, 129:17–24; Scharaswak Tr. 157:5–18. Trump complained that her husband had received two claims from AIS from the same date, which she characterized as "duplicate billing." Ex. 20, at BCBSWY003085. Trump further complained that the services provided by HIT were "not Home Infusion" because her husband "goes to the office and they refill his pain pump." *Id*.

64. In response to Trump's complaint, Megan Garrett, BCBSWY's Customer Service Representative, "submitted a [re]quest for a full refund" on Trump's husband's claim from AIS. Ex. 21, BCBSWY003102.

65. Almost a year later, on March 16, 2022, Trump sent an e-mail to several BCBSWY employees, including Scharaswak. In the e-mail, Trump stated: "If you receive an Appeal for Bond Pharmacy/AIS, for CPT Code S9328, please set up with the question and route to me for review."

Ex. 22, BCBSWY012250. In other words, Trump requested that all appeals of AIS's per diem claims be routed for her personal review. *Id.*

66.     At no point during her internal complaint process did Trump ever request, review, or receive the 2007 HIT Policy or the 2021 HIT Policy. Trump Tr. 78:22–79:7.

67.     On or about April 4, 2022, Jennifer Lakin, BCBSWY's Assistant Manager of Provider Relations, spoke on the phone with Beverly Aborne, AIS's VP of Financial Services, regarding AIS's per diem claims under Code S9328. Ex. 23, BCBSWY004228.

68.     In an internal e-mail thread from that same day after the phone call between Lakin and Aborne, Logan Trautwein, BCBSWY's then Manager of Payment Integrity determined (without referencing any document, policy, standard, guideline, or law) that: "The S9328 is for the administrative services, pharmacy services, care coordination and supplies and equipment. The pharmacy is not doing all of those things to qualify for that code in my opinion." *Id.*

69.     The next day, on April 5, 2022, Trautwein again stated on an internal e-mail thread (without referencing any document, policy, standard, guideline, or law) that AIS "cannot bill for S9328 as they are not doing all of the elements listed within that code." *Id.*

70.     Later that day on April 5, 2022, Butterfield advised Aborne via e-mail: "After discussion with multiple departments, your submission of the S9328 is not appropriate" because "You are not completing all elements for S9328." Ex. 24, BCBSWY004317. Notably, Butterfield did not reference any document, policy, standard, guideline or law in her e-mail – nor did she ever request one. Butterfield Tr. 41:19–20. Urbanek testified that neither the NHIA Standards nor the 2021 HIT Policy (or any other BCBSWY policy) supported Butterfield's position as communicated to Aborne, and he could not identify any standard or guideline that contained such a requirement. Urbanek Tr. 137:11–138:10.

71.     BCBSWY testified that April 2022 was the first time BCBSWY raised per diem billing issues with AIS, even though BCBSWY had already started denying AIS's claims **before** April 2022. Trautwein Tr. 168:3–8, 174:19–22, 178:7–12.

72.     BCBSWY also testified that Butterfield's statements were a departure and inconsistent with the 2007 HIT Policy. Trautwein Tr. 181:17–182:11.

73.     In response to Butterfield's e-mail, Aborne asked Butterfield to "provide details where the team found AIS was not meeting the requirement for billing S9328" including "[w]hat specifically . . . the team [is] using to make that determination." Ex. 24.

74.     Despite Aborne's specific inquiry, Butterfield vaguely responded that, because "AIS is simply mixing the drug/compound to the physician to give to the member, and not directly providing the home infusion service in the patient's home, the requirement is not met." *Id.*

75.     Aborne then asked for Butterfield to send her "a copy of [the] BCBS WY Home Infusion Policy." *Id.*

76.     After confirming with Trautwein, Butterfield claimed that BCBSWY does not have "a public facing policy that we can share." *Id.*

77.     She also claimed, without referencing any document, policy, standard, guideline, or law, that BCBSWY would "need all of" the following elements to be present for per diem billing to be appropriate: "administrative services, professional pharmacy services, care coordination, and all necessary supplies and equipment." *Id.*

78.     Urbanek testified that neither the NHIA Standards nor the 2021 HIT Policy (or any other internal policy) supported Butterfield's position as communicated to Aborne, and he could not identify any standard or guideline that contained such a requirement. Urbanek Tr. 137:11–138:10. Other BCBSWY witnesses also could not identify any basis for Butterfield's position. Trump Tr. 92:10–94:12.

79.     Scharaswak testified that BCBSWY does not have any policy or other guidance regarding what each covered service under Code S9328 means or how it is defined. Scharaswak Tr. 55:15–58:7. She also testified that there was no internal BCBSWY policy that identified which records a provider must provide to support billing Code S9328. Scharaswak Tr. 226:8–23.

80.     On April 7, 2022, AIS sent a letter to BCBSWY that explained in detail, among other things, the various HIT services provided by AIS, why AIS incurs out-of-pocket expenses to provide these services, why they are important and medically necessary, and why AIS's per diem claims are valid under Code S9328 and the NHIA Standards. *See* Ex. 1. Scharaswak, the decision-maker on whether to reimburse providers for HIT, testified that she had never seen this letter and it was not part of her team's medical record review of AIS's claims. Scharaswak Tr. 174:9–20.

81.     On April 26, 2022, Raymond Redd, BCBSWY's general counsel, sent a letter to AIS stating "S9328 should only be submitted for reimbursement when all the following services are completed: administrative services; professional pharmacy services; and care coordination." Ex. 25, BCBSWY002120. As with all of BCBSWY's prior correspondence, Redd did not reference or cite any document, policy, guideline, or regulation in support of his statement regarding the scope of S9328. *Id.* He provided no basis at all.  Redd further demanded that AIS reimburse BCBSWY in the amount of $251,630.05 for all S9328 claims paid. *Id*.

82.     BCBSWY's error codes that were provided to AIS did not inform AIS why Code S9328 was billed in error or how to fix the issue. Scharaswak Tr. 239:11–23.

83.     Further, after completing its investigation, and to this day, BCBSWY has never found that AIS committed waste, fraud, or abuse in billing its claims. Trautwein Tr. 185:8–12.

84.     As a result of BCBSWY's unsupported and unjustified positions, AIS filed this lawsuit on March 29, 2023. *See* ECF 1.

***BCBSWY's Refusal To Pay AIS Has No Basis***

85.     Scharaswak acknowledged that AIS provides the covered services listed in Code S9328. Scharaswak Tr. 122:6–123:17, 129:25–130:21, 131:2–132:3, 135:18–137:13, 174:25–176:9.

86.     Five BCBSWY witnesses were deposed in this case, including BCBSWY's corporate designee. ***Not a single witness could identify any document, policy, guideline, regulation, or law in support of BCBSWY's contentions that all covered services must be jointly provided for Code S9328 to apply***. Urbanek Tr. 138:17–139:5; Trump Tr. 92:10–94:12, 130:22–131:15; Scharaswak Tr. 187:14–188:3.

87.     In fact, Trump readily admitted that BCBSWY's position regarding the scope of Code S9328 may have been arbitrary. Trump Tr. 134:2–14.

88.     BCBSWY's corporate representative testified that BCBSWY solely relies upon a book called "HCPCS Level II" in determining HIT provider policies. Trautwein Tr. 124:19–125:14.  BCBSWY also pointed to this book in its verified interrogatory responses to explain its decision to deny AIS's per diem claims. Ex. 17, BCBSWY Responses to Interrogatories, Response to No. 6.

89.     However, BCBSWY only produced six pages from this book that merely list certain S codes.  Ex. 26, BCBSWY019075–80. A review of those pages confirms that BCBSWY has not and cannot identify any portions of that book that support BCBSWY's position that all services identified under Code S9328 must be performed at once to bill a daily per diem. *See* Ex. 17.

***AIS's Unpaid Claims***

90.     Since April 2021, BCBSWY has refused to process and pay both AIS's per diem claims and associated J-code claims. Trautwein Tr. 173:4–174:22, 212:14–19; Scharaswak Tr.

157:14–21. Because BCBSWY has refused to process AIS's claims, AIS also cannot engage in any internal appeals of its claims.

91.     While BCBSWY has refused to pay AIS for its per diem and drug claims, AIS has continued to provide HIT services to BCBSWY's members to ensure they have access to AIS's vital and necessary care.

92.     As of the date of the filing of this Motion, BCBSWY has caused AIS to suffer damages totaling approximately $1,373,529. Ex. 27, at 15–17.

### BCBSWY's Counterclaims And Affirmative Defenses

93.     On May 9, 2023, BCBSWY answered AIS's Complaint, asserted a number of affirmative defenses, and filed counterclaims. ECF 19. BCBSWY asserted counterclaims for: 1) Breach of Contract; 2) Breach of the Implied Covenant of Good Faith and Fair Dealing; 3) Conversion; and 4) Declaratory Judgment. *Id*. at 18–26. BCBSWY also asserted the following affirmative defenses: 1) Failure to State a Claim; 2) Failure to Mitigate; 3) Liability of Third Parties; 4) Waiver, Laches, Estoppel; 5) Unclean Hands; 6) Bad Faith; 7) Good Faith; 8) Set-Off; 9) Contractual Limitations; and 10) ERISA. *Id*. at 16–18.

94.     In support of its counterclaims, BCBSWY alleges that,"[f]or the period January 1, 2019, through April 8, 2022, AIS submitted improper claims under code S9328." ECF 19, ¶¶ 28, 29. BCBSWY further alleges that AIS was charging for services that were not medically necessary and it improperly billed Code S9328 because it did not jointly provide all covered services to members. *Id*. ¶ 16.

95.     BCBSWY's Counterclaim does not cite or reference any document, standard, guideline, regulation, or law supporting its position that all of the covered services under Code S9328 must be provided for a per diem to apply. *See* ECF 19.

19

96.     On July 24, 2023, the Court granted AIS's motion to dismiss BCBSWY's conversion counterclaim with prejudice. ECF 41.

## STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment has the burden of establishing the nonexistence of a genuine dispute of material fact. *See Nepco v. Felice*, 2013 WL 12086204, at *2 (D. Wyo. July 9, 2013). Once the moving party satisfies this initial burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). And when opposing summary judgment, the nonmoving party cannot rest on allegations or denials in the pleadings but must set forth specific facts showing there is a genuine dispute of material fact for trial. *See Travis v. Park City Mun. Corp.*, 565 F.3d 1252, 1258 (10th Cir. 2009). Summary judgment is appropriate here in favor of AIS on its claims and BCBSWY's counterclaims and defenses.

## ARGUMENT

**I.     AIS is Entitled to Summary Judgment on its Breach of Contract Claim.**

The undisputed facts establish that AIS is entitled to summary judgment on its breach of contract claim.[6] A breach of contract action in Wyoming depends on three elements: "[1] a lawfully enforceable contract, [2] an unjustified failure to timely perform all or any part of what is promised therein, and [3] entitlement of injured party to damages." *Westchester Fire Ins. Co. v. Merrill Inc.*, 2023 WL 5300993, at *4 (D. Wyo. May 18, 2023). The undisputed record evidence shows that AIS satisfies these elements here.

---

[6] In the alternative to its breach-of-contract claim, AIS seeks quasi-contractual relief for BCBSWY's unjust enrichment. ECF No. 1 ¶¶ 109–116.

There is no dispute that the Agreement is a lawfully enforceable contract. Indeed, in BCBSWY's counterclaims, it alleges that the "Agreement constitutes a binding and enforceable contract between AIS and BCBSWY." ECF 19, Counterclaim ¶ 27.

As to the second element, the undisputed facts show that BCBSWY committed an unjustified failure to perform under the Agreement and pay AIS for its per diem claims under Code S9328. BCBSWY's conduct was unjustified and breached the Agreement for several reasons:

- ***First,*** before entering the Agreement, BCBSWY performed substantial diligence on AIS as part of the credentialing process, and understood the types of services AIS provided and per diem billing that AIS was entitled to. *See* Undisputed Material Facts ("UMF") ¶¶ 31–32.

- ***Second,*** BCBSWY issued its 2007 HIT Policy, which was in effect at the time of the Agreement. Under that policy, BCBSWY ***expressly authorized*** per diem billing under Code S9328, and adopted the same definition of "per diem" and per diem reimbursement billing as the NHIA Standards. *See* UMF ¶¶ 35–36, 44–51.

- ***Third,*** even if BCBSWY later revoked the 2007 HIT Policy in 2020 (which was disputed by certain BCBSWY witnesses and contradicted by its corporate designee), BCBSWY undisputedly failed to communicate that material change in policy to HIT, in breach of Section 2.7 of the Agreement. *See* UMF ¶¶ 50 & n.3, 53.

- ***Fourth,*** the 2021 HIT Policy also expressly contemplates and authorizes per diem billing under Code S9328 and contains the same definition of "per diem" as set forth in the NHIA Standards. *See* UMF ¶¶ 52–62. Under either the 2007 or 2021 HIT Policies issued by BCBSWY, AIS was allowed to bill a per diem for each day a BCBSWY member had access to its therapy, full stop. *See* UMF ¶ 60.

21

- ***Fifth,*** BCBSWY paid AIS's per diem claims for over two years before arbitrarily changing its position. *See* UMF ¶¶ 61–62. BCBSWY's review of AIS's per diem claims did not originate from any legitimate review or audit, but because of a BCBSWY employee's personal (and mistaken) gripe . *See* UMF ¶¶ 65–66.

- ***Sixth,*** BCBSWY has no support for its position that all the covered services applicable to Code S9328 must be provided at the same time for per diem billing to apply. BCBSWY has not cited any document, guideline, policy, regulation, or law that imposes such a requirement. *See* UMF ¶¶ 7, 68–70. There is none because it makes zero sense. As such, there is no such restriction or requirement in BCBSWY's own internal HIT policies. *See* UMF ¶¶ 43–50, 51–60.

In sum, AIS properly billed BCBSWY for HIT services under the Agreement and BCBSWY's own HIT policies. *See also* Ex. 12, at 6–12; UMF ¶¶ 29–60, BCBSWY's position has no record support, and runs directly contrary to BCBSWY's own internal HIT policies in place since 2007 and performance for years. *See Westchester Fire Ins. Co. v. Merrill Inc.*, 2023 5300993, at *4 (D. Wyo. May 18, 2023) (granting summary judgment on breach of contract claim when Defendant failed to reimburse plaintiff for its performance under an enforceable agreement).

And as set forth in the Expert Report of Peter Dressel, BCBSWY has caused AIS to suffer substantial damages as a direct and proximate result of BCBSWY's breaches. Ex. 27, at 15–17.

## II.    AIS is Entitled to Summary Judgment on its Breach of the Implied Covenant of Good Faith and Fair Dealing Claim.

The Court should also grant AIS summary judgment on its implied covenant claim. That covenant "requires that neither party commit an act that would injure the rights of the other party to receive the benefit of their agreement." *Powell Valley Health Care, Inc. v. Healthtech Mgmt. Servs.*, 2013 WL 12085501, at *9 (D. Wyo. May 23, 2013). Thus, parties must act in "accordance

with their agreed common purposes and each other's justified expectations," and the covenant is breached when "a party interferes or fails to cooperate in the other party's performance." *Id.*

For all the same reasons AIS is entitled to summary judgment on its breach of contract claim, the undisputed facts establish that BCBSWY deprived AIS's ability to receive the benefits of the Agreement. BCBSWY's conduct undermined the agreed common purpose the Agreement and justified expectations of AIS – to be paid for the vital care and therapy it provides BCBSWY members. BCBSWY understood AIS and its therapy, and at the time the Agreement was entered, had internal policies that authorized AIS to bill a daily per diem. UMF ¶¶ 30–31. BCBSWY paid AIS's per diem claims for more than two years without issue before suddenly changing course and denying such claims without warning or sufficient explanation. *See* UMF ¶¶ 61–62.[7]

AIS therefore had the justified expectation that its Code S9328 claims would be paid by BCBSWY, consistent with the parties' intent under the Agreement and their two years of performance. The fact that BCBSWY's change in course is contradicted by its own internal HIT policies, and has no support from any other policy, regulation, standard, or law, further demonstrates BCBSWY acted in bad faith. *See Powell Health Care, Inc.*, 2013 WL 12085501, at *9 (holding defendant's failure to comply with "community standards of decency, fairness, or reasonableness" entitled to plaintiff to judgment as a matter of law).

## III.  AIS is Entitled to Summary Judgment on its Declaratory Judgment Claim.

AIS is also entitled to summary judgment on its declaratory judgment claim regarding BCBSWY's failure to pay its per diem charges. Cmplt. ¶¶ 117–120. In the case of a controversy between two parties, a court may "declare the rights and other legal relations of any interested party." 28 U.S.C. § 2201.

---

[7] Even if BCBSWY allegedly changed its internal HIT policies, those changes were not communicated to AIS as required under the Agreement. *See* UMF ¶¶ 50 & n.3, 52.

Here, there is an actual and present controversy between AIS and BCBSWY regarding whether BCBSWY must pay AIS's per diem claims under Code S9328 for the HIT services AIS provided to BCBSWY members in accordance with the Agreement and industry standards. For all the reasons described above, it must.

## IV.    AIS is Entitled to Summary Judgment on BCBSWY's Counterclaims.

For the same reasons set out above, AIS is further entitled to judgment on its breach claims, the Court should grant AIS judgment on BCBSWY's reflexive counterclaims. BCBSWY alleges that AIS breached the Agreement by improperly billing Code S9328 without providing all of the covered services at the same time. ECF 19. BCBSWY is mistaken.

The undisputed record evidence shows that AIS did not commit "an unjustified failure to timely perform all or any part" of the Agreement. *USI Insurance Servs. LLC v. Craig*, 2019 WL 5295553, at *3 (D. Wyo. Apr. 9, 2019). The opposite is true. Before entering the Agreement, BCBSWY performed substantial diligence on AIS, its business, and its services. UMF ¶¶ 30–31. BCBSWY's own internal policies from 2007 and 2021, which were never modified or replaced, authorized per diem billing under Code S9328, and aligned with the NHIA Standards.[8] *See* UMF ¶¶ 52–62. BCBSWY approved and paid AIS's per diem claims for over two years without issue. *See* UMF ¶¶ 61–62. After an internal complaint involving Trump's husband, BCBSWY then decided to reject AIS's per diem claims based on the unsupported position that all the covered services under Code S9328 must be provided at once.  But BCBSWY has not identified any factual or legal support for that position. *See* UMF ¶¶ 43–50, 51–60, 66, 68–70. Accordingly, AIS is entitled to judgment on BCBSWY's breach of contract and implied covenant claims. *See Winter*

---

[8] To the extent BCBSWY claims it modified the 2007 HIT Policy, it never communicated a modification to AIS in breach of Section 2.7 of the Agreement. *See* UMF ¶¶ 50 & n.3, 52.

*v. Pleasant*, 222 P.3d 828, 834 (Wyo. 2010) (holding "the party first committing a substantial breach of contract" cannot complain when the other party "fails to perform.").

Nor has BCBSWY presented any evidence regarding damages it supposedly suffered as a result of AIS's allegedly improper billing. That is fatal to BCBSWY's counterclaims. *See Sneve v. Mut. Of Omaha Ins. Co.*, No. 13-CV-252-ABJ, 2015 WL 12866983, at *4 (D. Wyo. Apr. 23, 2015) (granting summary judgment where party failed to prove damages). AIS is also entitled to summary judgment on BCBSWY's declaratory judgment counterclaim for the same reasons addressed above regarding AIS's claim. *See supra* at p. 21.

## V.    AIS is Entitled to Summary Judgment on BCBSWY's Affirmative Defenses.

BCBSWY's affirmative defenses fail to create any genuine issue of material fact sufficient to avoid summary judgment. BCBSWY raised eleven affirmative defenses, ECF 19, and on summary judgment, it must "come forward with proof of evidentiary facts showing the existence of triable issues of fact." *Nepco Fund II LLC v. DeFelice*, 2013 WL 12086204, at *4 (D. Wyo. July 9, 2013). BCBSWY has failed to do so. BCBSWY presented no evidence of claims that are the liability of third parties or subject to set off (third and eighth defenses), contractual limitations (ninth defense), or barred by ERISA (tenth defense). ECF 19. BCBSWY has presented no evidence of AIS's alleged failure to mitigate (second defense), or support for its equitable defenses of waiver, laches, estoppel, unclean hands, bad faith, and good faith (four through seven), or explain how those defenses justify BCBSWY's breaches. *Id.* BCBSWY never raised its failure to state a claim defense (first defense). *Id.* And BCBSWY has never identified any "additional defenses" to excuse it from payment. *Id.* As such, AIS should be granted summary judgment.

## CONCLUSION

The Court should grant AIS's motion.

RESPECTFULLY SUBMITTED this 27th day of August, 2024.

By: */s/ Jeffrey S. Pope*
Jeffrey S. Pope (Wyo. State Bar # 7-4859)
Andrea N. Grave (Wyo State Bar # 8-6702)
HOLLAND AND HART LLP
2020 Carey Avenue, Suite 800
P.O. Box 1347
Cheyenne, WY 82003-1347
Telephone: 307-778-4200
Facsimile:  307-778-8175
JSPope@hollandhart.com
ANGrave@hollandhart.com

Paul Werner (admitted *pro hac vice*)
Imad Matini (admitted *pro hac vice*)
Thomas Reklaitis (admitted *pro hac vice*)
Hannah J. Wigger (admitted *pro hac vice*)
Tifenn Drouaud (admitted *pro hac vice*)
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2099 Pennsylvania Avenue NW, Suite 100
Washington, D.C. 20006
Telephone: 202-747-1931
Facsimile: 202-747-3817
pwerner@sheppardmullin.com
imatini@sheppardmullin.com
treklaitis@sheppardmullin.com
hwigger@sheppardmullin.com
tdrouaud@sheppardmullin.com

Kazim Naqvi (admitted *pro hac vice*)
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2099 Pennsylvania Avenue NW, Suite 100
Washington, D.C. 20006
Telephone: 424.288.5336
knaqvi@sheppardmullin.com

ATTORNEYS FOR PLAINTIFF
BOND PHARMACY, INC. D/B/A AIS HEALTHCARE

32567360_v3